Good morning, and may it please the Court, Abraham Wagner for Southern California Counseling Center v. The Appellate. This is an insurance coverage case appeal which concerns coverage under computer fraud insurance policy. Underlying facts involve a criminal named Richard Zakarian who was prosecuted and pled guilty by federal prosecutors in Ohio, and specifically he admitted to diverting funds electronically and thereby committing wire fraud. Unfortunately for my clients, the Southern California Counseling Center, they were among his victims and were thereby victimized by his fraud. Mr. Zakarian is incarcerated. He has a restitution order. It would be nice if that were fulfilled, but we're not optimistic. So seeking other avenues, we tendered the claim to our insurance carrier, the Appellee Great American Insurance Company. Seeking coverage under the computer fraud insuring sections. The salient facts in our view come in large measure both from our proof of loss, completed by my clients with their initial attorneys from the Lock Lord firm, but also out of Zakarian's guilty plea to which he admitted a number of facts, including specifically electronically diverting funds into an is that below. Sorry, one second. Initially, the basis for denial of coverage before we filed suit by the appellee was that the taking by Mr. Zakarian was legitimate, that Ben Franklin Payroll Services was a payroll company in their view that my client had contracted with, and therefore Ben Franklin Payroll Services' initial taking of funds for payroll was legitimate, then Mr. Zakarian thereafter diverted them, and that only at that point in time, once the funds were already out of my client's position, did kind of misfeasance and malfeasance begin. Ultimately, though, that's contradicted by, that's unsupported by facts and contradicted by Zakarian's direct admissions that he diverted the funds for his own misuse from the inception. There was never an agreement for the kind of commingling funds that Zakarian did. So then in defending this we know Zakarian and Ben Franklin Payroll Services were an authorized representative, and the court accepted that assertion that even crediting there being a computer fraud, that the policy excluded from coverage for computer fraud acts by authorized representatives, and it found that Zakarian and Ben Franklin Payroll Services' conduct was within that exception. And we have a couple problems with that. First off, and foremost, Ben Franklin Payroll Services doesn't exist. There's certainly lots of paperwork using that name. Mr. Zakarian was a clever fraudster, and to say, hey, I'm just a person who's going to commingle your funds, would not be a terribly successful fraud. To give a parameter of legitimacy to the fraud, he invented also a trade name, Ben Franklin Payroll Services. He had a clever marketing scheme, but ultimately the core of the fraud and the core of the damage here was his misdirection of funds. The district court below relied on this court's opinion in Stanford, a 1999 opinion, which construed an admittedly similar authorized representative exclusion. But factually, this case could not be further, could not be more that was legitimate, that did exist, took funds, and there was a claim for computer fraud coverage there. And what ultimately the Ninth Circuit said, reversing the district court, is that there's no dispute that there's a payroll company. There's no dispute that for a time this was legitimate. There was conduct and misfeasance, ultimately, by the payroll company's controller. But the payroll company took the funds. They were an authorized representative. Case closed. Well, can't you authorize, as your representative, an illegitimate company or DBA? Hypothetically, if it were an actual entity, yes, but there is no such authorization. There's authorization, if you look at kind of what the, and first off, Your Honor, yes, they would bear the burden of proof for that. So they would bear the burden of proof and showing that there was something was an authorized representative. But here, there is no entity, there is no registered DBA. First of all, here this operated for a while on the level, for about six months, I forget the exact time. Somebody was doing this on behalf of your client. So they were authorized. I mean, I don't quite understand. Is it because they were unincorporated? Was it because it was a DBA that this mouth, this defendant was doing business under the name? Somebody was authorized and you authorized them, him, it, whatever. So as far as the Your Honor's point about there being things done for six months, there's two pieces. There was payroll processing and there was tax payments. Your Honor is correct that payroll was processed for six months. Tax payments were never made. From day one, not a single dollar was transmitted to the appropriate taxing authority. So that component was not transmitted. To Your Honor's point, though, that someone was processing the payroll, that's true. Using the BFPS name as a carrion was processing. And they were authorized to do what you say they didn't do, which was pass the money along to the taxing authorities. That was the breach of their obligation. They didn't do what they were supposed to do and what they were authorized to do. I just have difficulty understanding your theory. The theory is a couple. But bottom, it's that there is no BFPS. BFPS is a name. It's a fiction. It's part of a fraud. And it's necessarily so. Because again, if Mr. Zakarian were to have approached my client and said, hey, I have no company, no incorporation, no registered trade name, no registered DBA, none of the appropriate legal formalities to have a company or even a sole BFPS, but slapping the name on it doesn't give Mr. Zakarian authorization. And the misdirection here, as Mr. Zakarian himself admitted, was two funds for himself. So... No, no, no. This is your argument. Somebody was authorized to pay the employee's salary and to transmit taxes to the government. Call it what you will. And that entity, person paid the employee what he was supposed to do in transmitting the money. And you authorized them to do both. And he didn't do one. He, it, Zakarian doing business under the name BFPS? So there is, Your Honor is correct, there is a statement of authorization. But our core point is the statement of authorization is directed to something that doesn't exist. And I think that's kind of axiomatically a part of computer fraud. For example, move away from this case for a second just to understand. A phishing scheme, very common electronic computer fraud scheme, initiated by an email, and an email either contacts a person or a server and creates the feigned impression that there's someone who should have access to the systems. There's going to be a grant of authority intrinsic somewhere. In fact, in almost every fraud case, computer or otherwise, there's going to be some grant of authority. The issue that we're trying to drill down on here is that the grant of authority is to something that doesn't exist. That itself is a part of fraud. And in every fraud transaction, there's going to be a grant of authority under some pretense. Here, there's no existing agency. For example, an unincorporated association or X doing business under the name Y, they don't exist? No, that would exist as X doing business as Y. And if Mr. Zakarian were to come to us and said, hey, I'm Richard Zakarian. I like to do business under BFPS. I'm a sole proprietorship, or BFPS, Inc., and I like to do business under Ben Franklin because I just do. You have an entity, and then you have a trade name, and you have a link up. Here, all that was presented on the papers is this BFPS. It was never a registered trade name. It was never, in California, we'd need a fictitious naming statement. There was nothing of that like. I understand that, but that doesn't mean anything in the context of this case because all that means is that they can't sue or be sued, I guess. They can't sue on the contract that they make if they don't register. But I don't know. It doesn't really have any consequence. But I would submit it doesn't. An organization only exists by grant of a law. So for example, an individual exists naturally. A corporation exists because state law creates the authority to create a corporation. But if there is no created corporation, my say-so that I want to have a corporation doesn't make one. It's just a say-so. What about an unincorporated association? What about a union, which is generally an unincorporated association? What about a partnership in which any number of people do business under two names, let's say 150 partners? And they're a limited liability partnership, which is a creator of state law. They're a New York limited liability partnership. Even before this limited liability law took effect, there were law partnerships that did business and they were unincorporated. And not every partner was listed in the caption. So the prior form, Your Honor, I can't speak to. But my answer at present would be is that it's a limited liability partnership that creates because that's the legal entity. And there, you know, in stark contrast to here, there's no dispute that there is a legally created under state law recognized by all state law entity. So unless the panel has anything further, I'll resort to that. Why is this computer fraud? The contention that it comes within the definition of computer fraud is because they accessed your funds via computer, is that? Via computer and without authorization. There was never authorization for the specific direction of funds. And the access was, this was not a withdrawal, like a manual account withdrawal. The whole transaction, as Zakarian admitted, was done electronically by a computer. It just seems like almost anything these days would be computer fraud. I think it would be broader these days than in days of past. But check fraud would certainly not be computer fraud these days. Although I've noticed these days that you write a check and it shows up on your bank account as a ACH transaction. But in contrast to, and I think Your Honor is correct, in contrast to that type of transaction, though, where there's a physical writing of a check, the fraudsters act there would be the physical taking of the check, i.e. non-computer activity. Of course, it has an electronic manifest, as Your Honor correctly stated, just about everything does today. Here, the core misdirection, the core unauthorized activity was electronic. It wasn't that he physically took funds or physically took a check or some other non-computer activity. He was able to do this because your company gave him the account numbers. Yes. Well, my client gave the Ben Franklin, putting aside Your Honor's concerns, the Ben Franklin Payroll Services name was given my client's account numbers, and then Mr. Zakarian took and misdirected the funds. Thank you. Good morning. My name is Carlton Birch. I'm counsel for Great American. With me is a colleague, Ken Watnick. Thank you for your time this morning and for helping getting set up here. I appreciate that. First, I'll address the authorized representative exclusion. As we've cited in our brief, at the outset of the relationship between the SECC and Zakarian, Ben Franklin, whatever you want to call them, the Counseling Center executed a whole portfolio of documents constituting Zakarian, Ben Franklin as their agent for purposes of payroll processes, including, among others, an ACH authorization form specifically giving them the authority to make debits from the Counseling Center's bank account and to make transfers from that. On top of that, every payroll period, one of the Counseling Center's employees would log on to the Ben Franklin website and specifically tell them, we want you to take X dollars out for Mr. Smith, X dollars out for Ms. Gonzalez, and they would type in the number of hours that that person had worked for that pay period, plus their rate, whatever their rate was. So there was, one way or another, there was full authorization to make those debits. The Court is on, I think, the right track when it looks at the exclusion that what we have is an exclusion that adopts a functional approach to the type of person whose conduct is excluded. If the insured chooses to give some third-party authority, the keys to their bank account, that risk is borne by the insured and not taken on by the carrier. Can I ask a few questions? Is this a case, looking at it from the insured's standpoint, of fraud in the inducement or in the execution, and does it make a difference? Your Honor, I don't think it makes a difference because of what has been stated by the courts first in the Stanford case and in the Stop-and-Shop case. The Stop-and-Shop court recognized that the, quoting here, the policy underlying the exclusion clause is most readily understood as an effort to place on the insured the risk of a faithless agent. And then in Stanford, the court stated that the exclusion was intended to embrace all statuses that are authorized, and thus are the insured's, the policyholders' responsibility to supervise. So the courts have recognized, both this court and the First Circuit, as well as lower courts elsewhere that have considered that, that you take a look at what this third party is doing. And they have adopted a test that, to paraphrase the old poem, a rose by a rose still smells as sweet. They look at the functions that are delegated to them, the practical powers that they have, and use that overlaying the exclusion. In terms of what was decided by the court below, the district judge looked at it and said, well, what we have here is the Counseling Center was aware that it was executing an ACH transfer authorization. It was aware that it was executing a power of attorney form. It was aware of what are the documents were and what their purpose was. It may have been lied to about what, you know, what Mr. Zakarian may ultimately have intended to do, but that, as they found below, is fraud in the inducement and not fraud in the factum, as they put it when I was in law school. So there was no fraud as to the nature of the documents. So you say, according to the district judge, it would make a difference what kind of fraud it was? You know, Your Honor, because the court below didn't have evidence to talk about whether or not there was fraud in the factum, she really didn't reach that issue. But it said that here, because the fraud was in the inducement, that that renders those documents, as between the policyholder and Zakarian anyway, voidable and not void to have an issue. But that is not dispositive of the question of what does the fact that the Counseling Center reached out to Zakarian and Ben Franklin, gave them the authorization to take the money out of the account, and then it did so, Zakarian, that does not change the fact that they in fact gave them that power. It's the conveyance of the power and the keys to the kingdom that is the key for implicating the exclusion, regardless of the negotiations that go into the transaction. Did the district court actually address the argument that was made by counsel just now? Which argument are you referring to, Your Honor? That the policy doesn't apply because there was a nonexistent entity and therefore there was no authorized representative. You know, Your Honor, the... I thought it had been raised for the first time in a reply brief and never really addressed by the district court. It did talk about the question of the trade name issue. So that was addressed by them. And so I think that that is something that was taken into account. And it's our position that based upon what the Stanford Hospital case said and what the Stop-and-Shop case said, that it doesn't make any difference for operation of the exclusion. How would the language be written to cover such a situation? So if I understand... Yeah, someone who's, you know, violently induced to enter into a contract where the person never ever did what they were supposedly authorized to do. The crime policy is not tailored to provide indemnity to the insured for all types of third-party fraud. It assumes specific risks that are outlined, most notably the employee dishonesty agreement and certain other very specialized perils. I have never seen a clause that would provide insurance for all types of third-party transactional fraud, Your Honor. And so I don't know how one would draft that language and how one would underwrite that. Because that's essentially what the counseling center is asking for here, is that because a computer touched this transaction in some fashion, that the risk of loss due to fraud of any type anywhere along the trail falls to the insurer. And that's simply not the type of risk that this policy was designed to cover, or which could be underwritten. So what would it cover involving a third party? If you're referring to the computer crime coverage, Your Honor?  Yes. If this was done, I mean, this kind of, okay, what does it cover? The archetypal coverage afforded under that clause is either a hacking of the computer network, and the Universal American case out of New York and the Pestmaster case out of the Central District talk about that. Another possible peril that you'd see sometimes these days is if a virus infected and was sent in so that funds were sliced off like a penny at a time on a transaction. That is something that could fall within the coverage, depending on the specific facts and circumstances. So those are two examples, Your Honor. But that's not what we have here. What we have here is a situation where the insured executed any number of documents, specifically authorizing Zakarian to withdraw funds from this account, and then reinforcing that every two weeks by telling them how much they want to take out for each employee. And that simply is not the kind of peril that this coverage is designed to cover. And we've briefed that at some length in our papers, Your Honor. To hold on to otherwise would be to say that whenever you have a transaction that, where fraud touches it in any respect, that it would fall within the insuring agreement. Looking at the cases in more detail, the Methodist Health Systems case out of the district in Louisiana, that was a Bernie Madoff case. And in that situation, the coverage was identical to what we have here. And the district court in that case held that simply because Madoff and company were generating fraudulent bank statements and securities investment statements showing that there were investments that were performing when, in fact, the money was gone. And the fact that those were generated by and printed by a computer and sent by a computer, that did not mean that the loss was covered by the computer fraud coverage because the initial transfers out from the hospital were, in fact, authorized. Similar situations happened in the Pinnacle case that we've briefed at length and others as well. Thank you, counsel. Thank you. Briefly, I'd like to address the colloquy in response to questions by Judge Wardlaw as to how the exclusion should have been drafted to cover this. It could have said, again, we have here just the undefined terms, authorized representative. It could have been written to say whether the product of ostensible authority, whether pursuant to void authority or voidable authority, and I think that would have addressed clearly the issue. Because it wasn't drafted that way in this context, it's ambiguous, and we submit it should be construed against the insured and in favor of my client. As to the contention that hacking is computer fraud, hacking isn't fraud at all. It's terrible conduct. It's theft. It's theft. It's a tort. It's a content assault in cyber terms, but I don't see it as fraud. And this is called computer fraud, not computer tort or computer misconduct. As far as the contention, while the district court just applied Stanford, what the district court cited specifically, and this is at ER 8, and this is quoting Stanford 174F3 at 1085, is that the authorized representative provision excludes coverage for misappropriation of funds by those individuals or entities authorized. And I think to get back, I would not beat a dead horse, there is no authorized agency. What we heard in response is, well, no, there was a payroll tax agreement that authorized ACH. If you look at that agreement, it's at ER 325 and 326. First of all, it's unsigned, but I think to take another crack at Your Honor's earlier questions, because I understand to the heart of the matter, if you look at the signature line on ER 326, it says Ben Franklin Payroll Service, signature of authorized officer. Putting aside that it's not signed, I think that itself underscores the whole issue that I was saying about the entity. It purports to reflect a place for a signature of an authorized officer. Officers, entities, again, those are all creatures of state laws. The bare fact of someone saying, I want to do business under this name, does not create an officer status and doesn't create an entity to even have an officer. So again, I apologize for belaboring it, but I think that speaks to the nonexistence. Finally, as to the fraud and execution inducement question, Your Honor, I don't believe the district court made a finding of fraud in the execution. We submit that nonexistence resolves the issue in our favor in any event, but I don't see how given the counseling center's ostensible belief and documented belief below that there was an existing entity, the nonexistence of an entity could make this other than fraud in the execution. Thank you, counsel. Thank you. The case just argued will be submitted.
judges: Reinhardt, Wardlaw, Korman